Our next case is Centripetal Networks, LLC v. Keysight Technologies, Inc., 24-1930. Counselor, you may proceed. Good morning, Your Honors. Thank you very much, Judge Reyna. May it please the Court. The PTAB, in this case, made several fundamental errors. To start, it should not have combined four references that are in large part contradictory, cherry-picking limitations using pure hindsight, and the patented issue here, the 572 patent, as a roadmap. The PTAB's motivation to combine analysis is thoroughly lacking and entirely conclusory. The vast majority of it, or all of it, actually, is at Appendix 22, one page at most, and the top of Page 23. In fact, it is not even an analysis. It's not even a conclusory analysis. It is merely— I'm sorry. There was a prior IPR for a related patent, the 148 patent, right? And the Board, in that prior IPR, found a motivation to combine these references. Is that right? It did. And we affirmed that, right? Using Rule 36, you did. Okay. So I guess what I'm trying to understand is we—maybe that's already been a litigated issue, whether or not these references here, which are the same references there, as to whether there's a motivation to combine them. Well, I don't think so, Your Honor, and at least for three reasons, probably four. First of all, the claims themselves between the two patents are facially different, and there are meaningful limitations in the 572 patent, the patented issue here, and the prior patent that go to the timing and directly to the Board's incorrect claim construction in this case that I'll get to in a minute. So they're facially different. Second, the standard of review, the standard of claim construction was different at that time. They used the broadest reasonable interpretation, and as Your Honor may recall, that was changed. And in this case, it's the regular Phillips standard. So that's very different. And, you know, in any event, this was a Rule 36 decision. We don't know on what basis, actually, the Court decided on. But— But I guess you—I mean, hopefully you can understand my concern as to this one particular issue, which is the fact question of whether there was a motivation to combine references A, B, C, and D. Setting aside what the claims look like, setting aside how to construe those claims, this is more a separate line of inquiry, which is, as a fact matter, would a skilled artisan be motivated to combine these references? And that seems like something that was, in fact, debated and needed to be resolved in the prior litigation and was resolved against your client. Again, a motivation to combine. First of all, it was decided at the Board. This Court did not rule directly on this issue. We don't know because of the Rule 36. But more importantly, in order to decide whether there is a motivation to combine references that meet those claims, not our claims here, those claims, A, we need to know what those claims are, and B, what the claim construction and what the standard for claim construction is of those claims. Just because that was litigated then doesn't mean that our claims here with their own words, with their own claim construction, would get the same analysis. And in any event, we're still entitled to a ruling from this Court on that question. The claims here, they look very, very similar to me with the claims from 148, at least the representative claims. It's the same idea of having two different rule sets and then applying the first rule set and then in response to a need to swap the first for the second rule set, you know, cease any processing and then cache packets and then reconfigure the system so that you can use the second rule set. I mean, it looks really similar to me. I didn't quite see a difference. I'm not saying that there should be collateral estoppel, but I'm just saying at a minimum it would be a little peculiar, I think, for a full proceeding to conclude that the 148 claim is not patentable and then somehow this claim has got a game changer in it that suggests that it is patentable. First of all, the combination is wrong and lacks analysis, okay? And just because there was a conclusion in the first case doesn't mean that the analysis was done here. They didn't do it. If we look at it at page 22, they just didn't do it. They said, by the way, the Board, that there is no claim preclusion, okay? They agreed with us. And they went through to do the analysis anyway, but they didn't do a motivation to combine analysis at all. Now, if you look at the claims here, they require clearly a temporal limitation. They are – the steps are done in sequence here. And the claims are definitely different. So first of all, in the 148 patent, it requires preprocessing, okay? So the very top of the claim. Here it talks about modifying and then configuring. In the 148 patent, it talks about signaling and being responsive to the signaling and ceasing caching of one or more packets. In our case here, it talks about which packets. It talks about based on a signal to process, it talks about processing the packets, caching the packets that were ceased to be processed, and then a timing limitation after completion of the configuring, which is missing from the prior patent, okay? After completion of the configuring, start processing those cached patents. So there are definitely differences. But the main point here is that the analysis wasn't done and this Court didn't address it, and I think we're entitled to a review by this Court. And frankly, much more on this issue should be required of the PTAB. When the PTAB invalidates and combines four references and says that there is a motivation to combine, they need to tell us why. And they didn't. They didn't even conclude that the one of skill and the art should combine them. They just simply said once combined, the limitations are met. And by the way, so that's the first fundamental error. And the second fundamental error here is that even if combined, key limitations are missing. So specifically, even if combined, none of the four references disclose pausing and caching data packets during the rule swap. Well, HWEMA does disclose pausing. HWEMA discloses pausing in that particular application, but not caching. In 2019, these weren't particularly new concepts. No, no, that's each one individually. Each one individually. And caching was pretty common. Caching was common, of course, going back a long time, but not in this case. So when we're talking about swapping rules dynamically and on the fly, the state of the art, and by the way, it's 2013 at the time of the application. The application, thank you. So when you're talking about dynamically swapping rules on the fly, quickly in a system that saves rules and modifies them and then configures, the prior art simply didn't do it. The one reference they have is the RIS reference, which didn't pause at all. So the packets just came. Now they're saying, let's combine that with HWEMA. No explanation as to why we're combining with HWEMA, because by the way, RIS doesn't need to pause because of its own system. But OK, so they say, let's combine with HWEMA. HWEMA doesn't pause, doesn't cache, and it just lets the packets go through. That threatens the system with those packets in the meantime, or the packets get lost. And by the way, if HWEMA was interested in saving packets or avoiding the threat to the system, not caching, it proposes in that case to use parallel paging system. So they didn't do it either. Then you have to ask yourself, they're saying, OK, so let's now combine with a caching reference. Why? Again, we don't know. But then which caching reference? What they're saying is, let's combine with a hater reference. The problem is that hater, and most caching references in this type of situation, talk about caching during processing. The whole point of hater and other caching references for processing data packets is to speed up the processing of data, to make it more efficient. Hater talks about caching packets during active processing and not caching the whole packet because they need to go as fast as possible, decidedly not during a pause for a rule swap. And by the way, they're also combining with a fourth reference to talk about modifying and such. So, but wasn't there also a finding that hater found that a packet having no payload data would be cached entirely? Isn't that speeding up the process? Yeah. That's evidence of speeding up the process. Hater wants to speed up the process and caches packets, parts of packets actually. It can cache entire packets too. No. It only can cache an entire packet, perhaps, we don't know for sure. But at best, it can cache an entire packet if only that packet, if only if that packet has a header, no data. If it has data, hater actually says to inhibit caching the whole packet. But most importantly. The board found that in some instances, there was a header and at least one byte of payload that was cached. That's right, Judge Freeman. And so at least, so the hater does say that you can, if you have a header and some data, you can cache at least one byte of the data. But clearly not the whole data payload of that packet. But the most important point here is that it's all about speeding up the process, not caching during a pause. I see that I'm in my rebuttal time. I just wanted to explore a couple things about hater with you or the invention. Here, the, is it the Reese or Rose opinion of reference? I've been saying Roesi, but then my client corrected me and said Reese. Let's just say Roesi. So we've got Roesi and it talks about the concerns about latency and wanting to speed up processing. And caching is something that really helpfully contributes to high-speed data packet processing. So I mean, there is grounds to use it in a situation where, assuming you want to pause virus review of packets while moving from one rule set to the second rule set. Hater talks about caching portions of data packets, as you know, but it talks about that in terms of whatever is the necessary portion of the packet that is going to be operated on by the processor. So which parts do you need to have quick access to for doing processing on? And in the context of this combination where you're swapping out rule sets and you're going to pause any processing of the packets, why wouldn't it be that you would be, what's necessary to be processed are the entire packets before you let them go through the firewall. It seems like that's the most obvious outcome of the situation. And if Hater says process whatever is necessary, here in this combination, what is necessary would be entire packets. It's a completely different application, Judge Chen. In Hater, he wants to keep processing. He doesn't want to pause. He wants to keep processing and process as fast as possible. And for that, you cache only a portion of the data and the rest you put in memory and you let it go through. If you do that in our application, in a network security situation, you're defeating the whole purpose because now you're letting through the data that is potentially infected. Hater precisely says you should inhibit processing the whole data packet, only what's necessary for fast processing. I don't think it qualifies for teaching away, though. And that's really what you're arguing. Okay. I think it does because the whole point is not to cache the whole thing and to just speed up processing. But here's the most important part. Hater is about keeping processing. It has said absolutely zero about what to do when you're pausing and... This isn't an anticipation argument. It's an obviousness that we're looking for just the motivation to combine. Not that hater satisfies all of the limitations. First of all, you need to combine four references, not just hater, but okay. But on hater, the fact that he says nothing about pausing and caching during a pause, I think it takes it completely out of the realm. And I want to leave you, I know now I'm into my red time, I want to leave you with two fundamental points. First, even if your honors think that there might be a motivation to combine, I really don't think it is. The record below does not conclude that. The... Does not give a proper analysis for that. The board needs to be held to a higher standard. It cannot just simply take the bold assertions by the petitioner and just conclude with no explanation. Second, it categorically got the claim construction wrong. And if you find that that's correct, that in fact they did get the claim construction wrong, you must reverse. The claim construction here, they decide that the claim does not have a temporal limitation and that the caching can take place at any time, which is patently, so to speak, incorrect That on the face of the claim and with the specification, the whole point of these claims is to pause and cache during the rule swap, not at any time. They got that wrong, and at least for that, it needs to be reversed. So you did go well into your time, but we'll restore a little bit of time for you, okay? Thank you, Your Honor. Thank you, Counselor. Let's hear from Counselor Dietrich. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Jonathan Dietrich for Keysight Technologies. This appeal presents a straightforward case for affirmance based on the substantial evidence supporting the board's factual determinations that underpin its conclusion of obviousness. I will start with Centripetal's timing argument that the prior art does not render obvious caching packets while rule sets are being swapped. First, the board was correct to reject Centripetal's claim construction argument to limit caching to occur only while rule sets are being swapped. But more importantly, contrary to what Counsel just said, consideration of Centripetal's proposed claim construction does not change the analysis here in any respect because as Centripetal admitted in its brief, the board found that the prior art renders obvious the claims even under Centripetal's asserted claim scope. So just so I understand the board's primary theory of what would be the result of the combination of all these references, would the caching occur in the board's view completely before the reconfiguring or would it be occurring maybe a little bit before the reconfiguring starts but then continue to be caching during the reconfiguring? It wasn't clear to me what the difference was between what was in the board's mind as to the resulting combination versus what Centripetal wanted, which appeared to be that the caching would occur only during the reconfiguration process from rule set one to rule set two. Yes, Your Honor, I agree that I believe the record is a little bit unclear, especially compared between what Centripetal has argued in this appeal and what it argued before the  Well, I need to understand what the board's thinking to figure out, first of all, whether it was reasonable. So what was the board thinking? I think the board was thinking that just based on the layout of the claim, that the claim and the specification did not support limiting the timing to occur only during the reconfiguration step. For example, as the board said, it could occur after the signal to switch is received. Well, you were the petitioner, right? So you proposed a certain outcome from combining all these references. And so your proposed outcome was what, that the caching began before any reconfiguring started? No, Your Honor. To be clear, the board analyzed and the petitioner's analysis demonstrated exactly the claim scope that Centripetal is arguing for to explain why the caching occurred while rule sets are In other words, between the timing of when the signal to switch rule sets is received and ending with when the signal is received to resume processing. So why it doesn't matter, and as Centripetal admitted in its opening brief, that's the analysis the board performed and that's the analysis we performed. So it's unclear why they think that this claim construction matters when that was the analysis that actually was performed. So with that, getting into that analysis. Give us a quick summary of the motivation to combine analysis of HALER, ROESI, and HUMA. Yes. So I'll address those in two respects. I'll say ROES for shorthand, Your Honor, ROES plus HUMA, and then I'll address ROES and  So regarding ROES and HUMA, as the board noted, ROES is paragraphs 47 and 52. Where are you in the board opinion? Appendix 22. ROES is paragraph 47 and 52, teach a response system that initiates the process of swapping rule sets upon receiving a signal. And then looking at HUMA, paragraphs 31 and 36, still on Appendix 22, HUMA teaches that in response to receiving a signal to change rule set, packet processing pauses to avoid processing of packets with outdated rules. And that after rules are updated, a signal is received for packet processing to continue. So, still Appendix 22, the board credited Dr. Jacobson's testimony based on these teachings. A person of ordinary skill in the art would have understood that ROES's network device should pause the processing of any packets that arrive after the instruction to change rule set and not resume processing until the rule swap is completed. Now, addressing the combination of ROES and HATER, ROES's paragraph 13 discloses a rapid response system that has the same objective as what is disclosed in the 572 patent, namely swapping rule sets, quote, as quickly as possible, closed quote, to minimize harm from a network attack. Similarly, ROES's paragraph 18 discloses the goal of reducing latency during a potential or ongoing attack. That's discussed at Appendix 19. And these disclosures tie in with HATER's disclosure at column three, lines 53 through 59, of using a packet processor with an integrated cache to allow for high performance packet processing when receiving, processing, and forwarding packets. That's discussed at Appendix 22. And Dr. Jacobson explains that applying HATER's teachings of high performance packet processing to ROES would further ROES's goal of decreased latency and applying the rule sets to packets when switching rule sets. That's Appendix 270, paragraph 102, which is cited in the petition at Appendix 123. And similarly, at Appendix 21, the board acknowledged Dr. Jacobson's testimony that it would have been obvious to a person of ordinary skill in the art to cache packets as HATER teaches when pausing the processing of packets per ROES and HUMA so that packets can be efficiently processed once packet processing resumes with the second rule set. And again, that furthers ROES's goal of improved efficiency and reduced latency during a time of a network attack. So with this record, the board's determination that the combination of ROES, HUMA, and HATER teaches or suggests that any caching of packets would occur in the period between when a signal is received to change rule sets and when processing of packets reoccurs under the new rule set is grounded in the expressed teachings of the references and Dr. Jacobson's supporting testimony. And I'd also just add there was some discussion on this with your honors that I think this was a pretty clear record for collateral estoppel and the board found as much in its institution decision saying that centripetal likely would be a stop from arguing against motivation to combine if it were to press that issue. Ultimately, you know, it decided based on the teachings in the petition and fact-finding and those fact-finding are the same as it made before with respect to the 148 and supported by substantial evidence. But the relevant claim limitations here are identical. And the board even noted in its final written decision at I believe appendix 9, or sorry, appendix 11 and 12, by the authoring APJ who was the same APJ who authored the decision on the 148 patent, confirmed that the petitioner was correct that the board, quote, previously determined that the combination of Rose, Huma, and Hader renders obvious caching entire packets while the rule sets are being swapped, close quote. So with respect to this limitation disputed, the motivation to combine issue was identical and centripetal should be collaterally estopped. I would also respectfully submit they should be collaterally estopped on the core invalidity issue of whether those references teach that limitation given the board's finding that it previously determined the exact same issue. I know there's cases from this court saying that that shouldn't be the result if the prior decision was decided under broadest reasonable interpretation. But those cases don't involve the fact here where the panel of the second opinion explicitly decided the exact same issue irrespective of the difference in claim construction standards. With my remaining time, if your honors would like, I'll briefly address the caching entire packets argument. The board based its determination that Hader renders obvious caching entire packets on two independent grounds, both of which are grounded in substantial evidence and neither of which is efficient to support affirmance. That's appendix 23 through 26. And I'll start with the board's determination on the obviousness of caching entire packets that include a data payload. The board noted Hader's relevant disclosures at appendix 21, 23, and 24. These include Hader's disclosure at appendix 430, column 6 that, quote, it may be desirable for the header of a packet to be stored in the L2 cache, closed quote, and that, quote, it may be desirable to store a portion of the data payload of a packet in the L2 cache as well, closed quote. And the board also relied on Hader's disclosure at appendix 439, columns 24, lines 34 through 36 that, quote, the entirety of the header and at least one byte of data payload of the packet is stored in the cache, end quote. And furthermore, the board relied on the testimony of Keysight's expert, Dr. Jacobson, who explained, based on these disclosures, that Hader places no upper limit on the number of bytes of data payload that may be stored in the cache, and that would have been obvious to a person of skill and the art to store in the cache entire headers and at least one byte of data payload and up to the entire data payload. That's appendix 303 to 305 and appendix 1505. And just quickly moving on to the independent databases for packets that do not include a data payload. The board addressed this at appendix 25 and 26, again reviewing Hader's relevant disclosures and finding that Hader explicitly disclosed caching the entirety of such packets. For example, the board reviewed Hader's disclosure at column 11, lines 2 through 3, and found that there are packets such as TCP acknowledgment packets that include only a header and lack of data payload. And that's consistent with Hader's disclosure at column 11, lines 14 and 15 that, quote, figure 3 illustrates all of the header and L2 cache, as well as the disclosure at column 24, lines 34 through 36, that the entirety of the header is stored in the cache. Based on these disclosures for packets that comprise only a header and lack of data payload, the board found that Hader clearly teaches caching the entirety of those packets. That's appendix 26. I'd just like to note as a final point, your honors, that before the board, Centripetal did not dispute Hader's disclosure of storing the entirety of packets that lack a data payload in a cache. Instead, regarding those packets, Centripetal only argued that, quote, the claims require caching full versions of packets, i.e., the header and the payload data, close quote. That's found at appendix 1269 and also discussed at appendix 1488. The board addressed this argument that was actually presented to it at appendix 26, correctly rejecting it because nothing in the claim language or the specification advances an intent to exclude packets that lack a data payload from the meaning of packet. Here, Centripetal has presented a number of new arguments on this issue in appeal, but they were not presented before the board in their patent owner response and therefore should be forfeited. But they're also meritless. But unless your honors would like to discuss that further or any other questions, I will see the remainder of my time. Thank you for your argument. Thank you. Two main points, your honors. First of all, as I said earlier and as counsel went through during his argument, the entirety of the motivation to combine discussion from the board's point of view is in that one paragraph at page 22. If that becomes the standard for analysis under motivation to combine, the PTAB and any accused infringer can always invalidate the patent. But that is not this court's precedent. This court has been clear. I'll give you an example. The case in Renuvasiv, 842 F. 3rd, 1376, 1381 through 1383. Well, the final written decision may lack in some clarity and could have been written perhaps with more detail. Isn't it the case that it contains enough to show us the path to where the board's reasoning was headed and to finding that their reasoning was reasonable? I don't think so. Supported by substantial evidence? I don't think so, Judge Reina, because they don't grapple with the key fundamental questions of how these four disparate references can be combined. And this court made this clear. As I said, in the Renuvasiv case, I'll give you a couple of quotes from that case. Quote, the factual inquiry, I'm sorry. Although we reviewed the factual finding for substantial evidence, the factual inquiry whether to combine references must be thorough and searching. And the need for specificity pervades our authority on the PTAB's findings on motivation to combine. And also, we have, however, identified some insufficient articulations of motivation to combine. First, conclusory statements alone are insufficient. And instead, the finding must be supported by a reasoned explanation. Second, it is not adequate to summarize and reject arguments without explaining why the PTAB accepts the prevailing argument and so on. The last point on claim construction. The claim construction here is categorically wrong and it matters because if you reverse the claim construction, it becomes clear that no reference does caching and pausing during the rule swap. And here's the board's finding on this at Appendix 8 through 9. But I'm going to read from the top of page 9. Where it says, we are not persuaded that specifying when the caching occurs, i.e., while the rule sets are being swapped, is integral to the plain and ordinary meaning of caching the one on more packets. And a little bit above that says that it can be done, quote, even if the swapping of rule sets has not yet occurred. That's absurd. The whole point of the patent is to pause and cache during the rule swap. The claim construction is clearly wrong. And there's timing limitations and timing sequencing words throughout the specification. Under this Court's precedent, that claim construction needs to be applied to these claims. And as a result, you should reverse. Thank you very much, Your Honor. We thank the parties for their arguments this morning. This case will now be taken under submission.